No. 82,430

STATE OF KANSAS, *Appellee,* v. DAVID ZABRINAS, *Appellant.*
(24 P.3d 77)

Opinion filed June 1, 2001.

*Kirk C. Redmond,* special appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the briefs for appellant. David Zabrinas, appellant was on a separate brief pro se.

*Ellen H. Mitchell,* county attorney, argued the cause, and *Christina Trocheck,* assistant county attorney, and *Carla J. Stovall,* attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

LARSON, J.: This is David Zabrinas' direct appeal of his conviction of one count of sexual exploitation of a child, K.S.A. 21-3516, a severity level 5 person felony, for which he was sentenced to 256 months in prison.

Zabrinas, through the appellate defender, contends (1) K.S.A. 21-3516 is facially overbroad in violation of the First Amendment

to the United States Constitution because it criminalizes "exhibition in the nude" of children under age 16 and has no scienter requirement, (2) his statements were erroneously admitted, (3) the court erred in failing to excuse a juror for cause, (4) the court erred in failing to instruct that the jury must unanimously agree which acts support the conviction, and (5) he was erroneously sentenced by using the same prior conviction in both the criminal history score and as the basis for the persistent sex offender enhancement. Zabrinas argues in a pro se brief that (6) the trial court was required to instruct on promoting obscenity as a lesser included offense, and, (7) there was insufficient evidence for the jury to convict him of sexual exploitation of a child.

Our jurisdiction is pursuant to K.S.A. 20-3018(c) (transfer on our own motion).

*Statement of facts*

From late 1995 to October 1996, Zabrinas was employed as an assistant manager in a Salina restaurant where he performed part of his managerial duties on a computer in the back office. In June 1996, Zabrinas created an internet account with America Online (AOL), taking the screen name of "DZ100."

At the trial, a restaurant cook testified Zabrinas showed him AOL internet images of women having sex. The cook noted Zabrinas was "excited" when showing the pictures, and while he did state that all of the females were over the age over 18, he admitted that some were "flat chested." Another cook was with Zabrinas when he spent some late hours on the internet using AOL. He saw Zabrinas download to computer memory and print images of one woman having a young face and the body of an older woman.

During this time, F.B.I. Special Agent Daniel Chadwick was working on an internet project called Innocent Images. He testified concerning AOL "chat rooms." In September 1996, Agent Chadwick was monitoring an AOL chat room called "Preteen." Preteen is a private chat room that does not show up on a directory search. It can only be entered by individuals who know its name or accidentally access it. F.B.I. agents had determined the preteen chat room was being used to trade child pornography.

While in "'Preteen," Agent Chadwick noticed the screen name "DZ100" was present during a conversation about trading a well-known child pornographic series. The chat room activity was recorded and introduced at trial.

After someone suggested beginning a Preteen list, DZ100 requested to be on the list. Agent Chadwick testified that he received a file from DZ100 with a message "Hairless" attached, showing an image of a girl lying down with her breasts and genital area showing. Jane Marie Peterson, an advanced practice nurse, testified that by using the Tanner Scale, a scale used in medicine to determine the age of children based on sexual development, she had estimated the age of the girl to be 10 to 11 years old.

Zabrinas does not challenge on appeal the sexually explicit nature of the pictures. It is clear from the record that all the images and photographs depict children, and sometimes adult males with children, engaged in sexually explicit conduct. The graphic nature of each individual visual image need not be discussed, but the evidence was clear from the testimony of Peterson that all the children involved ranged from 5 to 14 years of age.

Late in the evening on October 6 and into the early morning of October 7, 1996, several sexually explicit pictures of minors were sent to DZ100 while he was in the Preteen chat room. The manager of the restaurant where Zabrinas worked testified that approximately at the same time on October 7, 1996, as the pictures were sent to DZ100, he drove by his restaurant to make sure that necessary "paper work" was properly entered in the computer. The manager noticed Zabrinas' car in the parking lot, and after entering the business caught Zabrinas looking at nude women on the computer with a pornographic image being printing as he entered. The manager testified Zabrinas panicked and "turned a whole bunch of different colors." He was asked by the manager to leave the premises but spent an additional 20-30 minutes on the computer during which time the manager believed he was deleting files from the computer. The manager testified that when Zabrinas was finished he removed a floppy disk from the computer and put it in his pocket.

On March 20, 1997, Agent Ronald Hagen of the K.B.I. and Special Agent Scott Crabtree of the F.B.I. executed a search warrant on Zabrinas' Salina residence. Several items were seized, including a computer disk that contained sexually explicit images of children under the age of 16. Zabrinas was not present during the search and later attempted to contact the police to determine what had been taken. Later that day, the two agents went to Zabrinas' residence with an inventory list.

Zabrinas was never taken into custody. He asked what was taken, and the agents told him that they were investigating child pornography and took computer disks from his house. Zabrinas invited the agents in and told them that he had an attorney, but that he wanted to tell them his side of the story. He admitted to using the computer at his employment to receive child pornography under the name DZ100, and he admitted sending pictures to others, but he said that he erased everything as soon as it came in. He also admitted to downloading some of the files to disk, but stated that he did so only to throw the disks away. He admitted to using the computer after work and mentioned a chat room called Preteen. He admitted some of the images that he saw on the internet were those of children. During the interview, his wife advised him to call an attorney, but he refused.

Agent Crabtree testified that after entering Zabrinas' home and being told by Zabrinas that he wanted to talk despite his attorney's warnings, the agents told Zabrinas that he would not be prosecuted federally for this crime. Agent Crabtree specifically stated Zabrinas was never told that he would not be prosecuted under state law. The agents admitted that some "how to" type questions were asked.

Zabrinas was charged with one count of sexual exploitation of a child. Prior to trial, he moved to suppress the interview with the agents; however, the motion was denied. During trial, he did not renew his objection at the time of the agent's testimony but did not testify himself and used as part of his theory of defense the statements that he gave to the agents during the interview. His counsel argued in support of the veracity of the statements that a

person who did not think that he was under a threat of federal prosecution would have no motive to lie.

The details of the voir dire of the juror will be discussed relating to that issue.

Zabrinas was convicted and after being found to be a persistent sex offender because of previous convictions was sentenced to 256 months' imprisonment. He appeals. We affirm his conviction but vacate his sentence and remand for resentencing. We discuss the following issues.

*Is K.S.A. 21-3516 unconstitutionally overbroad?*

K.S.A. 21-3516 states, in relevant part:

"(a) Sexual exploitation of a child is:

. . . .

(2) possessing any film, photograph, negative, slide, book, magazine or other printed or visual medium or any audio tape recording or any photocopy, video tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk in which a real child under 16 years of age is shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another."

"(b) . . . .

(1) 'Sexually explicit conduct' means actual or simulated: Exhibition in the nude; sexual intercourse or sodomy, including genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex; masturbation; sado-masochistic abuse for the purpose of sexual stimulation; or lewd exhibition of the genitals or pubic area of any person.

. . . .

(4) 'Nude' means any state of undress in which the human genitals, pubic region, buttock or female breast, at a point below the top of the areola, is less than completely and opaquely covered."

Zabrinas raises a two-pronged attack on appeal as to the constitutionality of K.S.A. 21-3516. He first contends, as he did below in his motion to dismiss, that any depiction of a nude child is punishable if evidence can be produced that an accused derived sexual enjoyment from the visual image. Second, he claims for the first time on appeal that the statute has no scienter requirement as to the age of the child depicted, which allows the State to prove only

that the child was under 16 years of age and not that the accused knew or should have known the person depicted was under 16 years of age.

Had the scienter argument been raised below, the jury might have been more specifically instructed. However, the instructions given are clearly sufficient and required a finding that the defendant's conduct was intentional, which was defined as "willful and purposeful and not accidental." One of the stated exceptions to our rule that "[a]n issue not presented to the trial court will not be considered for the first time on appeal," *State v. Smith*, 268 Kan. 222, 243, 993 P.2d 1213 (1999), is that such a question should be considered if necessary to serve the ends of justice or prevent denial of fundamental rights. See *State v. Bell*, 258 Kan. 123, 126, 899 P.2d 1000 (1995). Based on the clearly pornographic nature of all of the material viewed, the consideration of the scienter contention is not necessary here, and we limit our discussion to the overbreadth issue.

The "overbreadth doctrine" has been defined as "holding that if a statute is so broadly written that it deters free expression, then it can be struck down on its face because of its chilling effect—even if it also prohibits acts that may legitimately be forbidden." Black's Law Dictionary 1129 (7th ed. 1999). As we said in *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 71, 697 P.2d 1310 (1985):

" 'An overbroad statute makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions. *State v. Huffman*, 228 Kan. 186, 189, 612 P.2d 630 (1980). A successful overbreadth challenge can thus be made only when (1) the protected activity is a significant part of the law's target and (2) there exists no satisfactory method of severing that law's constitutionality from its unconstitutional applications. [Citations omitted.]' "

Although Zabrinas makes no argument as to how the statute is unconstitutionally overbroad as it relates to the facts substantiating his conviction, he nonetheless makes an overbreadth argument that the language stating that "sexually explicit conduct" includes *"exhibition in the nude"* (emphasis added) makes the entire act unconstitutional (and thus voids his conviction) because it could in-

clude innumerable nonsexual depictions of child nudity, which are common in the media, the arts, and homes of Kansas citizens.

This gives rise to a standing question whereby the State argues that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court." *New York v. Ferber*, 458 U.S. 747, 767, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 37 L. Ed. 2d 830, 93 S. Ct. 2908 [1973], and other cases). The *Ferber* opinion goes on to note that it is undesirable to consider every conceivable situation and that we should focus on " 'flesh and blood' " legal problems. However, the opinion then states:

"What has come to be known as the First Amendment overbreadth doctrine is one of the few exceptions to this principle and must be justified by 'weighty countervailing policies.' *United States v. Raines, supra,* at 22-23. The doctrine is predicated on the sensitive nature of protected expression: 'persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression. *Village of Schaumburg v. Citizens for a Better Environment,* 444 US 620, 634[, 63 L. Ed. 2d 73, 100 S. Ct. 826] (1980); *Gooding v. Wilson,* [405 U.S. 518, 521, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972)]. It is for this reason that we have allowed persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity. [Citations omitted.]

"The scope of the First Amendment overbreadth doctrine, like most exceptions to established principles, must be carefully tied to the circumstances in which facial invalidation of a statute is truly warranted. Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is 'strong medicine' and have employed it with hesitation, and then 'only as a last resort.' *Broadrick,* 413 U.S. at 613. We have, in consequence, insisted that the overbreadth involved be 'substantial' before the statute involved will be invalidated on its face." 458 U.S. at 768-69.

We have likewise recognized this exception in Kansas as we stated in *City of Wichita v. Wallace*, 246 Kan. 253, 267, 788 P.2d 270 (1990):

"[A]lthough an ordinance is not . . . overbroad as applied to a defendant, he or she may nevertheless be permitted to raise its . . . overbreadth as applied to the

First Amendment protected rights of third parties. An exception to normal standing requirements is allowed because the mere existence of the statute could cause a person not before the Court to refrain from engaging in constitutionally protected speech or expression. *Young v. American Mini Theatres*, 427 U.S. 50, 60, 49 L. Ed. 2d 310, 96 S. Ct. 2440, *reh. denied* 429 U.S. 873 (1976) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 611-14, 37 L. Ed. 2d 830, 93 S. Ct. 2908 [1973]). This exception is justified by the importance of maintaining a free and open market for the exchange of ideas, but can be overridden if the deterrent effect on legitimate expressions is not ' "both real and substantial," ' and if the statute is ' "readily subject to a narrowing construction by the state courts." ' *Young*, 427 U.S. at 60 (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 45 L. Ed. 2d 125, 95 S. Ct. 2268 [1975])."

We therefore reject the State's contention that Zabrinas is without standing to raise an overbreadth argument in light of his clear violation of the statutory provisions of 21-3516.

We consider the interpretation of this statute as a question of law over which our review is unlimited. See *State v. Lewis*, 263 Kan. 843, 847, 953 P.2d 1016 (1998). The manner in which we consider arguments of unconstitutionality is also applicable as we have said:

" ' "The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. [Citations omitted.]

" ' "In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citations omitted.]

" ' "Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt." ' " *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 300, 955 P.2d 1136 (1998).

Because we here consider a contention that the wording "exhibition in the nude" makes the statute overbroad, we point out that application of the First Amendment is not without limits, although a well-known friction exists between its protection and the enactment of laws related to obscenity and child pornography. *Ferber*, 458 U.S. 747, involved the review of a New York statute which prohibited the distribution of material depicting children engaged in sexual conduct. After stating that "the States are entitled to greater leeway in the regulation of pornographic depictions of chil-

dren," 458 U.S. at 756, the Court set forth the following reasons for this statement:

"*First.* It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.' [Citation omitted.]. A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens. [Citation omitted.] . . .

 . . . .

"*Second.* The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's partici500pation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled. . . .

 . . . .

" '. . . It is irrelevant to the child [who has been abused] whether or not the material . . . has a literary, artistic, political or social value. . . .'

"*Third.* The advertising and selling [possessing] of child pornography provide an economic motive for and are thus an integral part of the production of such materials, an activity illegal throughout the Nation. . . .

"*Fourth.* The value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not de minimis. We consider it unlikely that visual depictions of children performing sexual acts or lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work. . . .

"*Fifth.* Recognizing and classifying child pornography as a category of material outside the protection of the First Amendment is not incompatible with our earlier decisions." 458 U.S. at 756-63.

With this background, we turn to a brief history of the provision we construe here. The initial Kansas legislation establishing the crime of sexual exploitation of a child was passed in 1978 and criminalized using children to engage in sexually explicit conduct for the purpose of promoting a film, magazine, etc.

The statute was significantly amended in 1985, with new language added to criminalize "possessing any film, photograph, negative, slide, book, magazine or other printed or visual medium in which a real child is shown engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the

prurient interest of the offender, the child or another." L. 1985, ch. 109, § 1(1)(b). The amendment was apparently added to stop individuals from trading child pornography, even when not produced for profit. A representative from SRS who expressed support for the bill stated that the bill would tighten the law to cover those situations in which child pornography materials are traded or exchanged. H.B. 2105, Supplemental Note (1985). It is this addition, later slightly modified to include computer images, under which Zabrinas was found guilty of sexual exploitation of a child.

Zabrinas contends the statute is unconstitutionally broad because it criminalizes all visual forms of nude children because of its "exhibition in the nude" wording. The amendment adding the language "[e]xhibition in the nude" as a part of a definition of sexually explicit conduct was enacted in 1986. L. 1986, ch. 121, § 1. The wording originated in Senate Bill 178, and the following supplemental notes by the House Judiciary Committee were made concerning the bill: "The addition of exhibition in the nude to the crime of sexual exploitation of a child was suggested by SRS to deal with the problem of children under 16 being employed or used as nude dancers." S.B. 178, Supplemental Note (1986).

While this language may have been intended to apply to live performances rather than still photographs or other visual depictions, the wording of the statute clearly criminalizes the possession of child pornography, as the legislative language so states.

It is at this point that we must look to the entire language in the statute, for the wording challenged cannot be considered in isolation. The meaning of "exhibition in the nude" applies in the context of a child under 16 years of age engaging in sexually explicit conduct. A child or infant in a harmless moment could never be considered to be so engaged. It is clearly necessary that the child must have some understanding or at least be of an age where there could be some knowledge that they are exhibiting their nude bodies in a sexually explicit manner.

Additionally, the statute expressly requires that the picture or other visual depiction be possessed with the intent "to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender." K.S.A. 21-3516(a)(2). To satisfy this requirement, a pic-

ture or video must be more than an innocent display of nudity. No reasonable prosecutor could charge and no reasonable jury could find anyone guilty of satisfying sexual desires by viewing innocent pictures. We clearly hold that such photographs were not meant to come within the purview of those which could be used "to arouse or satisfy the sexual desires or appeal to the prurient interest" of individuals.

The "[e]xhibition in the nude" wording is related to and part of the entire definition of sexually explicit conduct, and we look to that language which identifies various kinds of specific actions. This is proper under the maxim *noscitur a sociis*, which *Farm Bureau Mutual Ins. Co. v. Carr*, 215 Kan. 591, Syl. ¶ 3, 528 P.2d 134 (1974), defined in this manner:

"The ancient and well known maxim *noscitur a sociis*, literally 'it is known from its associates,' is a common sense aid to the construction of doubtful language. Its effect is that the meaning of a word or phrase which may be obscure or doubtful when considered in isolation may be clarified or ascertained by reference to those words or phrases with which it is associated. It simply means that, taken in context, a word may have a broader or narrower meaning than it might have if used alone."

When read with the surrounding language, the words "[e]xhibition in the nude" do not make the statute unconstitutionally broad under any reasonable and sensible interpretation.

We construe the language to apply only to those situations when a child has been employed, used, persuaded, induced, enticed, or coerced into the nude display of the statutorily defined areas while engaging in sexually explicit conduct, also as statutorily defined, for purposes of appealing to the sexual desires or the prurient interest of the offender, the child, or another. The statute prohibits anyone from possessing a visual depiction of a child engaged in this type of conduct. The phrase "exhibition in the nude" does not make the statute unconstitutionally overbroad.

While we have previously stated that we do not review Zabrinas' scienter argument because it was not raised below, we point out that the testimony of Nurse Peterson was uncontroverted that the estimated ages of the children depicted were as young as 5 to 7 years and the oldest estimated age was 14. There is no reviewable issue that the fact the children involved were substantially under

the age of 16 years was not clearly and overwhelmingly proven and would be known to any viewer.

K.S.A. 21-3516 is not unconstitutionally overbroad.

*Denial of motion to suppress*

While denial of a motion to suppress is to be reviewed on appeal by a substantial competent evidence standard, with the ultimate legal decision drawn from those facts to be decided de novo with independent judgment, *State v. Webber*, 260 Kan. 263, 274-75, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090 (1997), in the present case Zabrinas did not object to the statements when they were introduced at trial and in fact used them to buttress his defense much as was done in *State v. Cellier*, 263 Kan. 54, 948 P.2d 616 (1997).

This issue is not properly preserved because of the failure to object when the evidence was offered at trial. See *State v. Milo*, 249 Kan. 15, Syl. ¶ 2, 815 P.2d 519 (1991).

Zabrinas used his statements to Agents Crabtree and Hagen that he innocently received the images and tried to return them with no intent to knowingly possess them as part of his defense. As was said in *Cellier*, since he "willingly allowed the admission of these statements at trial, [he] cannot now decide to challenge the admission of the statements on appeal simply because his trial strategy was unsuccessful." 263 Kan. at 65.

We also deem to be without merit Zabrinas' additional argument that because his motion to suppress was denied he was forced to "self-incriminate" by allowing his statements to be introduced at trial and then used in his defense. This is not a Fifth Amendment violation.

*Denial of Zabrinas' request to excuse a juror for cause*

Zabrinas next argues that he was deprived of due process and is entitled to a new trial because he had to use one of his peremptory challenges to remove a person from the venire panel who should have been removed for cause.

During voir dire one of the venirepersons was asked if she could put aside any prejudice she might have and give the defendant a

fair trial. She responded, "I have very strong feelings, but I will try to be fair." In response to an additional question, she explained there were some molestations in her family that she had strong feelings about. When asked, "[W]ould you want yourself as a juror on a case like this?" she responded, "Probably not." The prosecutor finally asked if she would put aside her feelings, and she said, "I would try." The court refused to grant the defense's motion to strike for cause, and the person was struck by one of the defendant's peremptory challenges.

Zabrinas admits his Sixth Amendment right to a fair trial was not violated because the person was in fact stricken but argues that under language from *Ross v. Oklahoma*, 487 U.S. 81, 101 L. Ed. 2d 80, 108 S. Ct. 2273 (1988), his Fourteenth Amendment due process rights were violated because he was wrongfully deprived of his full number of peremptory challenges. He also argues that Kansas law provides more protection than Oklahoma because we have no procedural limitation on the right to exercise peremptory challenges.

This court has considered and denied this precise question in two recently published opinions. *State v. Manning*, 270 Kan. 674, 19 P.3d 84 (2001), and *State v. Donesay*, 270 Kan. 720, 19 P.3d 779 (2001). We will not here repeat what was there held by our court, but those decisions govern this issue in a manner unfavorable to Zabrinas' contentions. The manner of jury selection did not result in a constitutional violation or require that a new trial be granted.

*Is Zabrinas entitled to a new trial because the jury was not instructed that it had to unanimously agree which viewing or possession of pornography supported the conviction?*

The standard of review as to this question is in doubt because we have Court of Appeals decisions which have reached different results. In *State v. Barber*, 26 Kan. App. 2d 330, 988 P.2d 250 (1999), no objection had been made by the defendant to the failure to give a unanimous jury instruction in a multiple acts case. The State contended the issue could not be raised due to lack of a timely objection. The court held that review was not proper under a

clearly erroneous standard because of the Sixth Amendment and, under such circumstances, the trial court's failure to give a multiple acts instruction was held to constitute structural error, relying on *Sullivan v. Louisiana*, 508 U.S. 275, 281-82, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993). 26 Kan. App. 2d at 331, see *Crutcher v. State*, 27 Kan. App. 2d 674, Syl. ¶ 3, 8 P.3d 1 (1999).

However, in *State v. Hill*, 28 Kan. App. 2d 28, 11 P.3d 506 (2000), rev. granted February 7, 2001, a different Court of Appeals panel applied a harmless error standard of review after noting the Kansas Supreme Court had not yet pronounced a decision on the standard of review. The *Hill* court pronounced the following test:

"After the court establishes the jury was presented with evidence of multiple acts, the first step is to determine whether there is a possibility of jury confusion from the record or if evidence showed either legally or factually separate incidents. Incidents are legally separate when the appellant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a subsequent criminal act is motivated by a 'fresh impulse.' *Simms v. U.S.*, 634 A.2d at 445-46.

"When jury confusion is not shown under the first step of the above analysis, the second step is to apply a harmless error analysis to determine if the error was harmless beyond a reasonable doubt with respect to all acts." *Hill*, 28 Kan. App. 2d at 35.

Applying this test, the court found that while multiple acts did exist, there was no potential for juror confusion and the acts were not legally or factually separate. The court then applied a harmless error review and opined that the evidence tended to show that if the jury found Hill guilty on one penetration, there was absolutely no possibility he would be found not guilty on the other. Thus, the court decided that the error was harmless.

We will not here determine the standard of review question unless such becomes necessary and we look first to the facts of this case.

The complaint in this case alleged one violation as follows:

"[B]etween September 11, 1996, and March 20, 1997, one David Zabrinas did then and there unlawfully, willfully, feloniously, and intentionally possess a visual medium . . . in which a real child under 16 years of age is shown engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or another."

The jury instructions tracked the complaint but did not expressly require the jury to agree on which picture supported the guilty verdict. The instructions did state: "If you have a reasonable doubt as to the truth of *any of the claims* made by the State, you must find the defendant not guilty." (Emphasis added.)

Zabrinas challenges the instructions under what has become a principal issue on appeal in numerous recent appellate cases and is commonly termed the "multiple acts" versus "alternative means" argument. Zabrinas' argument hinges on whether this is truly a "multiple acts" case.

We defined the difference between multiple acts and alternative means in *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994), in this manner:

" 'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.] In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt. [Citations omitted.]

" 'In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt. [Citations omitted.]' [*State v. Kitchen*] 110 Wash. 2d [403, 410, 756 P.2d 105 (1998)].

Zabrinas contends the State's evidence showed a wide variety of acts (at least 15 different possessions) which could have independently supported the charged offense. The evidence, according to Zabrinas, showed individual possessions and continuing possessions, and without an instruction directing the jury to agree upon

an act, or election by the prosecution, there was no mechanism to guarantee his right of a unanimous jury verdict.

The State counters by pointing out that only one count of sexual exploitation of a child has been charged. The conduct that formed the basis for the State's charge was claimed to be Zabrinas' continued downloading and possessing of child pornography. The sexually explicit material was viewed and possessed at the restaurant and alternatively at home on floppy disks.

The State argues the very nature of possessing child pornography is ongoing in nature and not required to be a distinct separate offense. It is contended to be analogous to possessing a narcotic drug with intent to distribute, and while 50 packages may be possessed, a charge of intending to sell each package would clearly be improper.

Because the result reached in cases involving claimed multiple acts tend to be highly fact sensitive, our result is not driven by any of the Kansas cases, although we look to them briefly.

*Timley* involved sexual assaults and the question of whether the crimes of rape and aggravated criminal sodomy were committed by means of force or fear. It was held there was no error in including both alternative means in one instruction to the jury.

*Barber* was deemed to be a multiple acts situation where there was one count of possession of a firearm charged but two specific separate instances shown, and the jury was not instructed that all members must agree that the same criminal act was proved beyond a reasonable doubt before finding Barber guilty of the crime.

In *Crutcher* there were two convictions of aggravated incest, with each count covering the same time period. The victim testified to at least four incidents. The opinion stated: "When faced with allegations of multiple incidents of abuse, while the State may charge multiple counts, the State must elect at some point the incidents for which adequate proof has been presented or give a unanimity instruction (the 'either/or rule')." 27 Kan. App. 2d at 675. The *Crutcher* opinion continues:

"The State cannot treat aggravated incest as a single act crime for purposes of charging multiple counts and at the same time treat the crime as a continuous course of conduct crime for purposes of admitting evidence. To permit the State

to both charge a defendant with multiple counts of a single act crime and present evidence as if it were a continuous course of conduct crime would circumvent constitutionally guaranteed protections." 27 Kan. App. 2d at 675.

While the *Hill* case is of more interest as to the ultimate question of whether a harmless error analysis is proper, the holding there was that while multiple acts did exist and a unanimity instruction was not given, there was no possibility that the jury could have found guilt on one act and not the other, which made the error harmless.

Several additional Kansas cases need to be mentioned. In *State v. Kelly*, 262 Kan. 755, 942 P.2d 579 (1997), there were convictions of one count of aggravated battery of a law enforcement officer and one count of simple battery of another officer. We recognized that in an alternative means case where a single offense may be committed in more than one way there must be jury unanimity as to the guilt for the single crime charged, but stated: "Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means." 262 Kan. 775, Syl. ¶ 1.

In *State v. Staggs*, 27 Kan. App. 2d 865, Syl. ¶ 2, 9 P.3d 601 (2000), *rev. denied* 270 Kan. 903, an aggravated battery case, it was held that "[w]hen the factual circumstances of a crime involve a short, continuous, single incident comprised of several acts individually sufficient for conviction, jury unanimity requires only that the jury agree to an act of the crime charged, not which particular act." The defendant contended that because some of the jurors could have found he kicked the victim and others that he punched the victim, he was not convicted by a unanimous jury.

The *Staggs* opinion pointed out that charging two counts would be multiplicious, citing *State v. Perry*, 266 Kan. 224, 230, 968 P.2d 674 (1998). Because of the brief time frame, it was held the evidence established a continuous incident that could not be factually separated and no "multiple acts" instruction was necessary.

In *State v. Wellborn*, 27 Kan. App. 2d 393, 4 P.3d 1178, *rev. denied* 269 Kan. 940 (2000), Wellborn was charged with one count of rape and four counts of aggravated indecent liberties with a child. There was testimony of multiple improper acts, and the re-

fusal to give a requested unanimity instruction was deemed to be reversible error.

Finally, in the recent Court of Appeals decision of *State v. Banks*, 28 Kan. App. 2d 829, 22 P.3d 1069 (2001), the majority held that a short, continuous, single incident comprised of several acts did not require an unanimity instruction, while the dissent argued the facts were not like *Staggs* and more like *Crutcher*, requiring reversal.

The two federal cases which Zabrinas cites, *Schad v. Arizona*, 501 U.S. 624, 651, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991) (an alternative means case), and *Richardson v. United States*, 526 U.S. 813, 143 L. Ed. 2d 985, 119 S. Ct. 1707 (1999) (a continuing criminal enterprise case where alternative facts tending to show a single element did not have to be unanimously agreed upon), are not dispositive or helpful.

It is difficult to place the facts in our case squarely under any of the cases cited. Under K.S.A. 21-3516(a)(2), Zabrinas must not only knowingly possess the visual images, but he must have done so "with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another." Multiple acts instructions are only necessary where the facts show separate incidents that are factually and legally sufficient to satisfy all of the elements of the crime. There was never evidence of the required lascivious intent for each image but rather only a showing that there was a continuous pattern of possessing sexually explicit pictures of children under 16 years of age. This is more properly considered as a continuing conduct case where there is but a single count or charge, with all evidence used to establish the requisite intent and knowledge to prove a violation of 21-3516(a)(2).

There was mental state evidence proffered by the State showing prior convictions of sexual offenses with minors, and there was testimony that at one point Zabrinas was "excited," but there was never any evidence of separate intent as to each of the images that he possessed. This is consistent with proof of continuing conduct and one charge.

At closing argument, the State argued that Zabrinas "possessed these things [inferring all the images] with the intent to satisfy his

own sexual desires." There was only a single charge here, and that is all that was proved. The requisite mental intent and knowledge was shown by all of Zabrinas' continuing actions. We hold this is not a multiple acts situation where a specific unanimity instruction was required.

*Is promoting obscenity under K.S.A. 21-4301(a)(2) a lesser included offense of sexual exploitation of a child?*

In determining whether a crime is a lesser included offense of another, this court has pronounced the following test:

"In determining whether a lesser crime is a lesser included crime or offense under K.S.A. 1987 Supp. 21-3107(2)(d), a two-step analysis or two-pronged test has been adopted. The first step is to determine whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. If so, the lesser crime is a lesser included crime of the crime charged. Under the second prong of the test, even if the statutory elements of the lesser crime are not all included in the statutory elements of the crime charged, the lesser crime may still be a lesser included crime under K.S.A. 1987 Supp. 21-3107(2)(d) if the factual allegations of the charging document and the evidence required to be adduced at trial in order to prove the crime charged would also necessarily prove the lesser crime."

"In determining whether a lesser crime is a lesser included crime under K.S.A. 1987 Supp. 21-3107(2)(d), the first step relies solely on the *statutory* elements of the crime charged and the crime which is asserted to be a lesser included crime thereof. If the statutory elements of the two crimes do not meet the statutory elements analysis, then the second step requires the facts as alleged in the charging document *and* as must be proven at trial to be considered." *State v. Fike*, 243 Kan. 365, Syl. ¶¶ 1, 2, 757 P.2d 724 (1988).

Promoting obscenity is defined by K.S.A. 21-4301:

"(a) Promoting obscenity is knowingly or recklessly:

. . . .

(2) possessing any obscene material or obscene device with intent to issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit or advertise such material or device."

Under K.S.A. 21-3516(a)(2), sexual exploitation of a child is

"possessing any film, photograph, negative, slide, book, magazine or other printed or visual medium or any audio tape recording or any photocopy, video tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk

in which a real child under 16 years of age is shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another."

Under the *Fike* test, "[t]he first step is to determine whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged." 243 Kan. 365, Syl. ¶ 1. Promoting obscenity under 21-4301(a)(2) requires that the material be possessed with intent to "issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit or advertise." Sexual exploitation of a child under K.S.A. 21-3516(1)(b) does not have this element. Therefore, the first prong of *Fike* is not met.

Even if the first prong of *Fike* is not met, "the lesser crime may still be a lesser included crime . . . if the factual allegations of the charging document and the evidence required to be adduced at trial in order to prove the crime charged would also necessarily prove the lesser crime." 243 Kan. 365, Syl. ¶. We note that a 1998 amendment to 21-3107 eliminates the second prong of the *Fike* test; however, that amendment is not applicable to the facts herein. Neither the charging document nor the evidence required to be introduced at trial proved that the defendant had the intent to "issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit or advertise" the child pornography in his possession. See K.S.A. 21-4301(a)(2). The State was able to prove its case without resorting to the introduction of evidence tending to show that the defendant was going to in some way distribute the images, demonstrating that promoting obscenity is not a lesser included offense.

*Sufficiency of evidence to establish that Zabrinas has exploited a "real child" as required by K.S.A. 21-3516(a)(2).*

When sufficiency of the evidence is attacked, the standard of review is "whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant

guilty beyond a reasonable doubt." *State v. Pratt*, 255 Kan. 767, Syl. ¶ 1, 876 P.2d 1390 (1994).

Zabrinas' pro se brief contends that *State v. Peltier*, 249 Kan. 415, 819 P.2d 628 (1991), *cert. denied* 505 U.S. 1207 (1992), is authority for his contention that there must be evidence that he used a child to portray the sexually explicit images and that there was no evidence of any "real child's" involvement. In *Peltier*, this court stated that the use of a child to make sexually explicit photographs is prohibited, under 21-3516(a)(1), but it is also a violation of the statute under 21-3516(a)(2) to possess sexually explicit images of a child; the statute does not require that the defendant himself or herself originate the images.

Under the language of the statute, the possession of child pornography as well as the initial capturing of the image is criminalized. The supplemental note to H.B. 2105 (1985) suggests that the intent was to "tighten the law to cover those situations in which child pornography materials are traded or exchanged."

A review of the evidence clearly shows it was sufficient to prove all of the elements of the crime charged beyond a reasonable doubt.

*The trial court erred in sentencing Zabrinas by using the same prior criminal conviction both in computing his criminal history score and in doubling the sentence under K.S.A. 1996 Supp. 21-4704(j).*

Zabrinas challenges his sentence as improper and contrary to K.S.A. 21-4710(d)(11). Interpretation of a statute is a question of law over which our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

Zabrinas had been convicted of two person felonies prior to the present charges: indecent liberties with a child, K.S.A. 21-3503, and aggravated indecent solicitation of a child, K.S.A. 21-3511. Both convictions were used to establish his criminal history as B. In the instant case, he was convicted of sexual exploitation of a child, a severity level 5 person felony. With a criminal history of B, the presumptive maximum mandatory prison sentence was 128 months. Under 21-4704(j), Zabrinas was found to be a persistent sex offender due to his past conviction under K.S.A. 21-3511. His

sentence was doubled to 256 months. He contends this was erroneously accomplished. We agree.

K.S.A. 1996 Supp. 21-4704(j) reads as follows:

"The sentence for any persistent sex offender whose current convicted crime carries a presumptive term of imprisonment shall be double the maximum duration of the presumptive imprisonment term. The sentence for any persistent sex offender whose current conviction carries a presumptive nonprison term shall be presumed imprisonment and shall be double the maximum duration of the presumptive imprisonment term. Except as otherwise provided in this subsection, as used in this subsection, 'persistent sex offender' means a person who: (1) Has been convicted in this state of a sexually violent crime, as defined in K.S.A. 22-3717 and amendments thereto; and (2) at the time of the conviction under subsection (1) has at least one conviction for a sexually violent crime, as defined in K.S.A. 22-3717 and amendments thereto in this state or comparable felony under the laws of another state, the federal government or a foreign government. The provisions of this subsection shall not apply to any person whose current convicted crime is a severity level 1 or 2 felony."

Zabrinas argues that the conviction used to find that he was a persistent sex offender may not also be used to calculate his criminal history. He contends that using his prior conviction as a basis for finding him to be a persistent sexual offender is an enhancement. Under K.S.A. 21-4710(d)(11), prior convictions cannot be used to calculate the criminal history if they enhance the applicable penalties of the present conviction:

"Prior convictions of any crime shall not be counted in determining the criminal history category if they enhance the severity level or applicable penalties, elevate the classification from misdemeanor to felony, or are elements of the present crime of conviction. Except as otherwise provided, all other prior convictions will be considered and scored."

Subsequent to the sentencing, this exact question was analyzed and answered in a well-reasoned decision by the Kansas Court of Appeals, *State v. Taylor*, 27 Kan. App. 2d 62, 998 P.2d 123 (2000). The Court of Appeals noted that although the legislature may have intended for the conviction to be double counted, the plain and unambiguous language of the statute must be followed. The court found that K.S.A. 21-4710(d)(11) plainly prevents, in determining criminal history, the counting of a prior conviction that was used to double the sentence under 21-4704(j). The court opined that if

the legislature had intended to allow the double counting of the conviction, it could have placed language in the statute evidencing that intent as it did with predatory sex offenders. K.S.A. 21-4716(b)(2)(F)(ii)(a). Because the legislature failed to expressly provide for the double counting as it did with predatory sex offenders, the Court of Appeals refused to allow the double counting against defendant Taylor.

The analysis and holding of *Taylor* is approved by this court and must be applied in this case. Zabrinas must be resentenced with a criminal history score of D, excluding the conviction for aggravated indecent solicitation of a child. The provision of 21-4704(j) requiring doubling the maximum duration of the presumptive imprisonment term must be applied to the sentence resulting from the lesser criminal history score.

The conviction is affirmed, the sentence is vacated, and the case is remanded for resentencing.