NOT DESIGNATED FOR PUBLICATION

No. 121,571

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ELIATHAN PHILLIP WILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed October 2, 2020. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and ATCHESON, JJ.

PER CURIAM: In this sentencing appeal, Eliathan Williams contends the court erred when it used one of his prior convictions to both elevate his criminal history to A and classify him as a persistent sex offender. Because the Legislature changed the law, Williams is wrong. We hold the court did not err—we affirm. And we reject his claim that his sentence to lifetime postrelease supervision is unconstitutional.

1

In June 2017, Williams used online services to try to convince 11-year-old girls in the United Kingdom to show him their genitals. According to the affidavit of probable cause, he had several videos of pornography depicting young children on his cell phone. Having agreed with the State, Williams pled guilty to attempted sexual exploitation of a child, and the State dismissed the other charge. As the factual basis for the plea, Williams admitted he had requested nude photos of A.H. and B.M. for the perpetration of sexual exploitation of a child.

The presentence investigation report set Williams' criminal history score as B. The State objected, contending it should have been A. The record shows that Williams had three prior person felonies: one conviction for aggravated indecent liberties with a child and two convictions for indecent liberties with a child.

The issue thus arose regarding whether one of the prior offenses could be used both to enhance Williams' criminal history score and to classify him as a persistent sexual offender. The district court ruled it could. Thus, the court scored Williams' criminal history as A and found him to be a persistent sex offender.

Before sentencing, Williams challenged lifetime postrelease supervision as unconstitutional. The court rejected his challenge and sentenced him to 68 months in prison with lifetime postrelease supervision.

This appeal focuses on the use of Williams' prior convictions. Williams contends that the prior conviction used to classify him as a persistent sex offender could not also be used to calculate his criminal history score.

Williams had three prior convictions for sexually violent crimes. The district court used the same conviction to both elevate his criminal history score to A and to classify

him as a persistent sex offender. If only two of Williams' prior person felonies could be counted in his criminal history, his score would be B rather than A.

Some definitions are helpful at this point. A persistent sex offender is a person who, at the time of conviction of a sexually violent crime, already had a conviction for at least one sexually violent crime. K.S.A. 2016 Supp. 21-6804(j)(2). The sentence of a persistent sex offender is double the maximum presumptive prison term for the offender's current crime of conviction. K.S.A. 2016 Supp. 21-6804(j)(1).

Examining the controlling statute sets this issue to rest. Generally, when deciding a defendant's criminal history, all prior adult felony convictions are considered and scored for criminal history purposes. But under K.S.A. 2016 Supp. 21-6810(d)(9), prior convictions that "enhance the severity level, elevate the classification from misdemeanor to felony, or are elements of the present crime of conviction" are excluded from an offender's criminal history.

Williams' prior conviction was not used to enhance the severity level of his current offense. It did not change his current offense from a misdemeanor to a felony, and it was not used as an element of his current offense. Thus, under the plain language of the statute, the prior conviction cannot be excluded from Williams' criminal history. We hold the court correctly computed his criminal history score.

We acknowledge that the field of excluded convictions was broader in the predecessor statute to K.S.A. 2016 Supp. 21-6810(d)(9). In fact, several older cases on scoring the criminal history of persistent sex offenders differ from our ruling today. But the statutory change means a change in the answer to the question presented in these cases.

3

In *State v. Zabrinas*, 271 Kan. 422, Syl., 24 P.3d 77 (2001), the court held it was error to use the same prior criminal conviction to compute the offender's criminal history score and to double the offender's sentence as a persistent sex offender. The court held that "[u]nder K.S.A. 21-4710(d)(11), prior convictions cannot be used to calculate the criminal history if they enhance *the applicable penalties* of the present conviction." (Emphasis added.) 271 Kan. at 443. Then the court specifically approved and applied the analysis and holding of this court's decision in *State v. Taylor*, 27 Kan. App. 2d 62, 998 P.2d 123 (2000). *Zabrinas*, 271 Kan. at 444.

In *Taylor*, the court relied on the plain language of K.S.A. 21-4710(d)(11), which prohibited use of a prior conviction to determine the criminal history score if the prior conviction enhanced the severity level or *the applicable penalty* of the current crime. 27 Kan. App. 2d at 64-65. The court said:

> "There can be no doubt that classification as a persistent sex offender enhances the applicable penalties—[the persistent sex offender statute] requires that the presumptive sentence be doubled for this class of offenders. Accordingly, K.S.A. 21-4710(d)(11) forbids additional use of the prior conviction when determining the criminal history score of a persistent sex offender." 27 Kan. App. 2d at 65.

But in *State v. Pearce*, 51 Kan. App. 2d 116, 121-22, 342 P.3d 963 (2015), this court held that the rulings in *Zabrinas* and *Taylor* had been abrogated by a statutory change. See *State v. Fowler*, 311 Kan. 136, 145-46, 457 P.3d 927 (2020). The *Pearce* court considered whether an offender's past burglary conviction could be used both to apply a statute that made prison the default sentence for recidivist burglars and to calculate the offender's criminal history score. 51 Kan. App. 2d at 116-17.

The court noted that a prior version of K.S.A. 21-6810 provided an exclusion not only when the prior conviction "enhanced the severity level of the crime but also when it enhanced the *applicable penalties*" of the present crime of conviction. *Pearce*, 51 Kan.

4

App. 2d at 121; see K.S.A. 2006 Supp. 21-4710(d)(11). The recidivist burglar statute enhanced the offender's applicable penalty. But the "or applicable penalties" language was removed from the statute in 2010. See L. 2010, ch. 36, § 1. Thus, the *Pearce* court held a prior burglary conviction could now be used both to classify an offender as a recidivist burglar and for criminal history purposes. 51 Kan. App. 2d at 120-21. The same analysis applies to classifying offenders as persistent sex offenders.

Williams argues that we should instead apply the 2006 version of the statute with the "or applicable penalties" language included because his prior convictions were committed in 2006. He cites no authority to support this view. We decline his invitation.

A person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time that crime was committed. *State v. Keel*, 302 Kan. 560, Syl. ¶ 9, 357 P.3d 251 (2015). The classification of a prior offense to determine an offender's sentence turns on the law in effect when the current crime for which the offender is being sentenced was committed. 302 Kan. at 589-90.

Williams was sentenced for a crime he committed in June 2017—well after the "applicable penalties" language was removed. By applying the law in effect when he committed this crime, the sentencing court was correct.

*We hold that the lifetime postrelease supervision term of the sentence is constitutional.*

We must decide whether the postrelease supervision component of Williams' sentence is constitutionally appropriate not only for Williams individually, but also categorically. We hold that imposing this term is not disproportionate. But certain legal principles provide a context for our ruling.

To answer this question, we must review some fundamental points of law dealing with proportionality of sentences. There are constitutional limits on punishment in Kansas. Cruel or unusual punishment is prohibited by § 9 of the Kansas Constitution Bill of Rights. A punishment may be constitutionally impermissible if "'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" *State v. Spear*, 297 Kan. 780, 799, 304 P.3d 1246 (2013).

The Eighth Amendment to the United States Constitution also prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. Defendants may raise two types of challenges under the Eighth Amendment:

(1) a case-specific challenge in which the defendant claims, given the circumstances of the case, the length of his or her sentence is grossly disproportionate to the offense; or

(2) a categorical challenge in which the defendant claims the punishment is inherently disproportionate for a specific category of offenders, involving the nature of the offense or the characteristics of the offender.

*Graham v. Florida*, 560 U.S. 48, 59-61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

The test for disproportionality under the Kansas Constitution is similar to the case-specific analysis under the Eighth Amendment to the United States Constitution. See *State v. Ross*, 295 Kan. 424, 429, 284 P.3d 309 (2012).

To determine proportionality under the Kansas Constitution, we look to the so-called *Freeman* factors:

"'(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this

6

inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

 "'(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

 "'(3) A comparison of the penalty with punishments in other jurisdictions for the same offense.'" *State v. Mossman*, 294 Kan. 901, 908, 281 P.3d 153 (2012) (quoting *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 [1978]).

No one factor is controlling. Ultimately one factor may weigh so heavily that it directs the conclusion. But before that conclusion is reached, consideration should be given to each factor. *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008).

*We examine the facts here.*

Williams contends lifetime postrelease supervision is disproportionate when considering the specific facts and circumstances of his case. He argues that two factors weigh in his favor. First, this was a nonviolent crime, there was no physical contact, no physical force or injury, no evidence of any injury by the victim, and the danger was "minimal at best." In his view, he just "asked for nude photos of underage girls on-line." He then suggests the serious consequences of lifetime postrelease supervision—such as the deprivation of his right to vote, his inability to serve on a jury, and being subjected to warrantless searches—are too severe for this crime. He also argues that more serious crimes like second-degree murder have less harsh punishments.

Williams does not challenge the district court's reliance on the probable cause affidavit in its findings. Thus, this court can treat the district court's findings as supported

by substantial competent evidence because an issue not briefed is deemed waived and abandoned. *State v. Funk*, 301 Kan. 925, 933, 349 P.3d 1230 (2015).

Williams focuses on the nature of his offense, arguing that he did no harm because there was no physical contact. But he forgets that on the other side of the computer screen were real 11-year-old girls. They could suffer real psychological harm from his actions. He was culpable for his crime—with full knowledge that he was acting only for his own sexual gratification. And the Legislature has designated attempted sexual exploitation of a child as a sexually violent offense. See K.S.A. 2016 Supp. 22-3717(d)(5)(H), (M).

More importantly, Williams ignores the second half of the first *Freeman* factor— the character of the offender. This man has three prior convictions for aggravated indecent liberties with a child and indecent liberties with a child. He poses a real danger to society because of his recidivism. Williams is the type of offender for whom postrelease supervision is needed—one who commits a new sexually violent offense shortly after release. Such supervision can help facilitate intervention before Williams can complete a crime, as seen in this case. Given the penological purposes of postrelease supervision—rehabilitation, incapacitation, and deterrence—the first *Freeman* factor weighs heavily against Williams.

The second *Freeman* factor also weighs against Williams. Williams argues his sentence is harsher than the punishment in Kansas for second-degree murder. But our Supreme Court has rejected this challenge several times. In *State v. Cameron*, 294 Kan. 884, 892-93, 281 P.3d 143 (2012), the court held that while a defendant subject to lifetime postrelease supervision is under a longer cumulative sentence than a defendant sentenced for second-decree murder, a sentence of lifetime postrelease supervision for a sexually violent offense in not grossly disproportionate when considering the penological purposes of lifetime supervision and the seriousness of the crime. And the *Mossman* court

8

rejected attempts to focus on what might happen if a defendant commits another felony while on supervised release. 294 Kan. at 914-17.

We do not address the third *Freeman* factor as Williams did not mention it in his argument.

*Precedent directs our ruling on the categorical challenge.*

Williams contends lifetime postrelease supervision is a categorically disproportionate punishment when imposed on a conviction of attempted sexual exploitation. He contends this court should "reevaluate the purpose and proportionality of imposing lifetime postrelease on an attempted offense, notably in this case where the offense is categorized as a severity level 7 offense."

He contends *State v. Williams*, 298 Kan. 1075, Syl. ¶ 8, 319 P.3d 528 (2014), was wrongly decided. He compares his case to *State v. Dull*, 302 Kan. 32, 351 P.3d 641 (2015). He argues society's need for retribution is far less when there is no physical contact between the victim and offender. He notes that attempted sexual exploitation can lead to probation depending on the offender's criminal history. He argues the way criminal history is used to determine sentences in Kansas is a sufficient deterrent. He argues lifetime postrelease supervision does not incapacitate or rehabilitate offenders.

In considering a categorical Eighth Amendment challenge, courts first consider objective indicia of societal standards as conveyed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing rule at issue. Second, guided by precedent and the Eighth Amendment's text, history, meaning, and purpose, the court exercises its own independent judgment and determines whether the punishment violates the constitution. *Graham*, 560 U.S. at 61. The court considers

whether the sentencing rule at issue serves legitimate penological goals—retribution, deterrence, incapacitation, and rehabilitation. 560 U.S. at 67, 71.

In *Williams*, the court held that lifetime postrelease supervision was not categorically disproportionate for first-time offenders over age 18 who were convicted of sexual exploitation of a child for possession of child pornography. The court cited a Ninth Circuit Court of Appeals decision which held lifetime supervised release for receipt of child pornography was not cruel and unusual punishment. 298 Kan. at 1088-89. That federal circuit court stated:

> "Here, 'objective indicia' suggest that society is comfortable with lifetime sentences of supervised release for sex offenders, as such sentences are common. According to the United States Sentencing Commission, in the last five years, federal courts have sentenced 1875 defendants convicted of child pornography and child prostitution crimes to lifetime supervised release. [Citation omitted.]" *United States v. Williams,* 636 F.3d 1229, 1233-34 (9th Cir. 2011).

We are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Kansas Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

*Dull* is distinguishable. In *Dull*, the court held that mandatory lifetime postrelease supervision was categorically unconstitutional when imposed on juveniles. 302 Kan. 32, Syl. ¶ 8. The court found the penological goals of lifetime supervision for juvenile sex offenders were diminished because of juveniles' diminished culpability and lower risk of recidivism. 302 Kan. at 61. The court's reasoning simply does not apply to an adult offender on his fourth sexually violent offense.

Lifetime postrelease supervision is also not categorically disproportionate punishment for attempted crimes. In *State v. Reed*, 51 Kan. App. 2d 107, Syl. ¶ 8, 341

P.3d 616 (2015), this court held lifetime postrelease supervision was not unconstitutionally disproportionate for attempted crimes because offenders guilty of trying to commit a crime still have the intent required to commit it.

Lifetime postrelease supervision does serve legitimate penological goals. Supervised release helps rehabilitate sex offenders. Further, supervised release can incapacitate sex offenders because they are kept under the "watchful eye" of probation officers. *Cameron*, 294 Kan. at 898. Rehabilitation and incapacitation are critical goals of the criminal justice system given the propensity of sex offenders to reoffend. *Mossman*, 294 Kan. at 930. Lifetime postrelease supervision serves the combined penological goals of rehabilitation, incapacitation, retribution, and deterrence. *State v. Collins*, No. 100,996, 2012 WL 6734500, at *8 (Kan. App. 2012) (unpublished opinion).

Williams has not shown that lifetime postrelease supervision is unconstitutional categorically or as applied.

Affirmed.