NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0445n.06

No. 16-5515

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 27, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| LARRY AUBREY HENSON, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE: SILER, SUTTON, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Defendant Larry Henson pleaded guilty to one count of possession of child pornography, 18 U.S.C. § 2252(a)(4)(B), and was sentenced to a below-Guidelines term of 110 months in prison. Henson reserved the right to appeal the denial of his motion to dismiss the indictment on the grounds that § 2252(a)(4)(B) is unconstitutionally overbroad and violates the First Amendment because it prohibits a substantial amount of protected speech by minors, i.e., "sexting" and other self-publication of sexually explicit images; and also violates the Equal Protection and Due Process Clauses. We AFFIRM.

**I.**

A federal grand jury returned a two-count indictment on April 19, 2007, charging Henson with possession of child pornography, and seeking forfeiture of the devices used in that offense. When Henson failed to appear for a hearing, an arrest warrant was issued. The case remained on the district court docket with Henson listed as a fugitive. PSR ¶ 19. The indictment was dismissed in March 2011 without prejudice, after attempts to locate Henson were unsuccessful.

PSR ¶ 48.  The unobjected-to PSR states that "[a]n Interpol Red Notice (international notice of a wanted person) was issued in late 2014," and authorities later located Henson in Argentina.  PSR ¶ 20.  After being held in Argentine custody for a time, Henson voluntarily returned to the United States and was taken into custody in Georgia.  PSR ¶¶ 20, 48.

A second indictment, returned in November 2014, again charged Henson with possessing child pornography and included a forfeiture provision.  PSR ¶ 3.  Henson moved to dismiss the indictment pro se because he wanted to present issues that his court-appointed federal public defender believed "could not [be] present[ed] based on existing law."  PID 47.  After the district court denied Henson's motion, he entered into a plea agreement, reserving the right to appeal the denial of his motion to dismiss.  Under the plea agreement, the parties agreed to recommend a sentence of 110 months.

At the change-of-plea hearing, the Government stated:

If we had gone to trial, the Government would have presented through testimony and admissible evidence the following:

In approximately 2006 FBI agents located in the Western District of Tennessee in Memphis were investigating the exchange of child pornography online.  As part of the process, they would obtain search warrants for a suspect's computer or online account, identify people who were trading with the suspect, and then develop additional cases.

One of those individuals used the screen name lonewolfntn@aol.com.

Agents got subscriber information from AOL through subpoena including the name and city of residence of the "Lone Wolf" account owner, and that person was identified as Larry Henson of Memphis.

Agents located Mr. Henson . . . In the [first] interview, which was noncustodial, Mr. Henson admitted that he did subscribe to AOL.  He did participate in sexually-themed chat rooms.  He said that people in the rooms would advertise the chance to share photos and invited those in the room to add their name to the sharing list.  He received and distributed images through these lists.  He admitted having received images of minors engaging in sexually explicit conduct and saving those to his computer.

Mr. Henson was also interviewed again in March, 2007; and during that conversation Mr. Henson noted that he sent images in the chat room because you had to send them in order to receive them.

He let agents review his computer and AOL account and a Yahoo account and he provided the computer and also directed the agents to the files where those images would be found.

Forensic review of the computer revealed more than 600 images of minors engaging in sexually explicit conduct. Agents also saw there an image of a minor female from a case that was prosecuted in the Western District of Tennessee. The female had been the victim in another case. It was prosecuted here. She was under 18 years old when the picture was taken, and she was identified by the initials "N.M.Y."

. . . .

That would have been the Government's proof.

PID 165-67/Tr. Change of Plea Hrg.

The PSR provides further detail:

11. On March 2, 2007, a review was conducted of the G4 E-MAC computer owned by Larry Henson. The review included an analysis of the software programs, Internet browsing history, directory structure, active files, saved e-mails and a search for sexually explicit images of children . . . . The Netscape browser history contained links to the following sites:

> Beam.to/jaks
> Beam.to/little boys
> Kinkeyextreme.com/familysex
> Fucking-boys.com

The above sites' names appeared in images found on the hard drive that depicted minors engaged in sexually explicit behavior . . . .

12. The computer's directories included two directories titled "pictures" and "movies" and their subdirectories . . . The images depicting minors engaged in sexually explicit behavior were primarily found in the pictures, pictures/downloads, pictures/downloads/yng, and movies directories. There were approximately 4,600 digital images and 235 digital movie files that were sexually explicit in these directories. Of these files, 440 were image files and 4 were movie files . . . that depicted prepubescent minors engaged in sexually explicit behavior.

. . . .

14. The agents noted that one file titled !toiletsuck.jpg," which depicted a topless prepubescent female minor engaged in oral sex with an adult male, was found in

three different directories . . . Another file titled "youn.jpg1jpg" depicted a fully naked prepubescent female being penetrated vaginally by an adult male using his penis . . . .

PSR at 5-6.

The PSR calculated the sentencing guidelines range at 235 to 293 months (total offense level of 38 and criminal history category I), but determined that the controlling term is 120 months because the statutorily authorized maximum sentence of ten years is less than the range minimum. PSR ¶ 70.

At sentencing, the district court adopted the PSR's findings of fact and guidelines calculations without objection. PID 178-79. The district court granted the Government's motion for a three-point reduction for acceptance of responsibility and imposed a 110-month sentence. Henson's court-appointed counsel moved to withdraw after he timely filed a notice of appeal. This court granted the motion and appointed new counsel. CM/ECF R.E. 9.

## II.

We review de novo the district court's ruling on the constitutionality of § 2252(a)(4)(B), *United States v. Rose*, 522 F.3d 710, 716 (6th Cir. 2008), as well as its legal conclusions on a motion to dismiss an indictment, *United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008).

### A. First Amendment Claim - Overbreadth

Henson's overbreadth claim is brought as a defense to prosecution. As the Supreme Court stated in *Los Angeles Police Department v. United Reporting Publishing Corp.*:

[T]he allowance of a facial overbreadth challenge to a statute is an exception to the traditional rule that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." [*New York v.*] *Ferber*, [458 U.S. 747,] 767 [(1982)] (citing *Broadrick* [*v. Oklahoma*], [413 U.S. 601, 610 (1973)]). This general rule reflects two "cardinal principles" of our constitutional order: the personal nature of constitutional rights and the prudential limitations on constitutional adjudication. 458 U.S., at 767 []. "By

-4-

focusing on the factual situation before us, and similar cases necessary for development of a constitutional rule, we face 'flesh and blood' legal problems with data 'relevant and adequate to an informed judgment.'" *Id*., at 768 [] (footnotes omitted). Even though the challenge be based on the First Amendment, the overbreadth doctrine is not casually employed. "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is 'strong medicine' and have employed it with hesitation, and then 'only as a last resort.'" *Id*., at 769 [] (citing *Broadrick*, *supra*, at 613 []). "'[F]acial overbreadth adjudication is an exception to our traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct-even if expressive-falls within the scope of otherwise valid criminal laws . . . .'" 458 U.S., at 770 [] (quoting *Broadrick*, *supra*, at 615 []). *See also Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569 [] (1987).

528 U.S. 32, 38–40 (1999).[1] "[P]articularly where conduct and not merely speech is involved," a statute will not be invalidated as unconstitutionally overbroad unless it "reaches a substantial number of impermissible applications." *New York v. Ferber*, 458 U.S. 747, 770–71 (1982).

Further, the Supreme Court observed in *United States v. Williams*:

According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech. The doctrine seeks to strike a balance between competing social costs. *Virginia v. Hicks*, 539 U.S. 113, 119–120 [] (2003). On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. *See Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485[] (1989); *Broadrick v. Oklahoma*, 413 U.S. 601, 615 [] (1973). Invalidation for overbreadth is ""strong medicine"" that is not to be "casually employed." *Los Angeles Police Dept. v.*

---

[1] *See also* The Supreme Court 2007 Term, 122 Harv. L. Rev. 385, 385, 390 (2008) (noting that overbreadth claims "have been almost invariably rejected by the Supreme Court when brought as defenses to prosecution . . . No criminal defendant has won an overbreadth claim without showing that a statute was applied unconstitutionally since 1981's *Schad v. Borough of Mount Ephraim*[, 452 U.S. 61 (1981)]."

> *United Reporting Publishing Corp.*, 528 U.S. 32, 39 [] (1999) (quoting *Ferber*, 458 U.S., at 769 []).

553 U.S. 285, 292–93 (2008); *see also Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013).

The first step in a facial overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers. *Williams*, 553 U.S. at 293. The second step is to determine whether the statute "criminalizes a substantial amount of protected expressive activity." *Id*. at 297; *see also New York v. Ferber*, 458 U.S. 747, 769–70 (1982).

**1.**

Section 2252(a)(4)(B), titled "Certain activities relating to material involving the sexual exploitation of minors," provides in pertinent part:

> (a) ***Any person*** who—
>
>    . . . .
>
> [(4)](B) knowingly possesses . . . 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—
>
> > (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> >
> > (ii) such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252 (emphasis added). "Minor" means any person under the age of eighteen years. 18 U.S.C. § 2256(1). "Sexually explicit conduct" means "actual or simulated (i) sexual intercourse including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic

abuse; or (v) lascivious exhibition of the genitals or pubic area of any person."   18 U.S.C. § 2256(2)(A).

**2.**

Henson maintains that the district court erred in denying his motion to dismiss because § 2252(a)(4)(B) prohibits or chills a substantial amount of protected speech, that is, "sexting"[2] or other forms of self-publication of sexually explicit materials by minors.  Henson points out that this court has struck down other sex-related statutes as overbroad, citing cases including *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129 (6th Cir. 1994) (public-indecency provision of ordinance held overbroad in that it facially banned all nudity in public places).  On appeal (but not in his pro-se motion to dismiss the indictment) Henson asserts, and cites support for, the proposition that 20% of teenagers have engaged in sexting.  Appellant Br. 18 (citing *The National Campaign to Prevent Teen and Unplanned Pregnancy, Sex and Tech: Results From a Survey of Teens and Young Adults.*   http://thenationalcompaign.org /sextech/pdf/sextech_summary.pdf.[3]  ("A significant number of teens have electronically sent, or posted online, nude or semi nude pictures or videos of themselves . . . . 20% of teens overall"), and Appellant Br. 21 (citing Birkhold, Mathew H. "*Freud on the Court:  Reinterpreting Sexting and Child Pornography Law*, 23 Fordham Intell. Prop. Media & Ent. L. J. 897, 903 n.25 (2013) ("One recent survey found that about one in five teenagers reported having engaged in sexting.")

---

[2] Merriam-Webster defines sexting as "the sending of sexually explicit messages or images by cell phone."   *See* Merriam-Webster Online, https://www.merriam-webster.com/dictionary /sexting.

[3] The correct web address/URL is https://thenationalcompaign.org/sites/default/files/resource-primary-download/sex_and_tech_summary.pdf.  This 2008 survey "was fielded online to a total of 1,280 respondents—653 teens (ages 13-19) and 627 young adults (ages 20-26)."

Addressing the second step of overbreadth analysis, Henson asserts that the challenged statute could encompass images of sexually explicit conduct regardless whether the photographer or viewer actually knows the age of the person being photographed, the minor in the picture posted the picture him or herself, or the minor is even alive or dead. As such, Henson argues, "the statute's sweep is too broad." Appellant Br. 19.

**3.**

Assuming, without deciding, that Henson can establish that sexting by minors constitutes protected speech under the First Amendment, he has not established that there is a "substantial amount" of such speech burdened by the enforcement of § 2252(a)(4)(B) because he cites no case where federal authorities have attempted to enforce the statute against a minor who produced and disseminated a sexually explicit depiction of him or herself.[4] Under these circumstances, Henson has not shown that § 2252(a)(4)(B) is overbroad.

**B. Due Process**

The Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due process of law . . .." U.S. Const. amend. V. Henson does not assert that he did not have notice that he was prohibited from possessing sexually explicit images, or that he was deprived of some procedure to which he is constitutionally entitled. We thus assume his

---

[4] In his pro se motion to dismiss the indictment, however, Henson cited one case *Miller v. Mitchell*, 598 F.3d 144 (3d Cir. 2010). In *Miller*, parents, on behalf of their minor children, sought a temporary restraining order to enjoin a county district attorney from initiating child pornography charges under a Pennsylvania statute, 18 Penn. Stat. § 6312, against the minors for sexting. The county attorney promised to drop charges if the minors completed a six- to nine-month program focused on education and counseling. *Id.* at 143–45. The plaintiffs' § 1983 action alleged that the defendant county attorney's threatened prosecution was in retaliation for the minors refusing to participate in the education program, in violation of the minors' First and Fourth Amendment rights. We note that this case did not involve a threatened federal prosecution.

claim is one of substantive due process. To establish a substantive due process violation, Henson must establish the existence of a constitutionally protected property or liberty interest. *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 861 (6th Cir. 2012). "Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id*. at 862.

On appeal, Henson reiterates his First Amendment overbreadth arguments: "The statute . . . violates Due Process because it is overbroad, due to the vast amount of new technology and possibility of self publishing in this area, and Mr. Henson reincorporates the First Amendment arguments from the first assignment of error as violative of Due Process." Appellant Br. 36-37. Citing *Stanley v. Georgia*, 394 U.S. 557 (1969), Henson asserts that § 2252(a)(4)(B) violates due process "as he has the right to read or observe what he pleases—the right to satisfy his intellectual and emotional needs–in the privacy of his own home." Appellant Br. 37.

We agree with the district court that even assuming a liberty interest in possessing child pornography, § 2252(a)(4)(B) would not violate due process because banning the possession of child pornography serves a legitimate governmental interest. PID 91, citing *Osborne v. Ohio*, 495 U.S. 103, 109–10 (1990) ("Given the gravity of the State's interests in this context, we find that Ohio may constitutionally proscribe the possession and viewing of child pornography." *Id.* at 111.)

Henson's reliance on *Stanley* is misplaced. In *Osborne*, the Supreme Court limited *Stanley*'s applicability to child pornography cases, noting that unlike the statute at issue in *Stanley*, prohibitions on possession of child pornography serve legitimate important functions such as preventing child abuse. *Osborne*, 495 U.S. at 111 ("Osborne points out that in *Stanley* we rejected Georgia's argument that its prohibition on obscenity possession was a necessary

incident to its proscription on obscenity distribution. This holding, however, must be viewed in light of the weak interests asserted by the State in that case. *Stanley* itself emphasized that we did not 'mean to express any opinion on statutes making criminal possession of other types of printed, filmed, or recorded materials . . . . In such cases, compelling reasons may exist for overriding the right of the individual to possess those materials.' (citing *Stanley*, 394 U.S. at 568, n.11)).

As for Henson's argument that § 2252(a)(4)(B) violates due process because it might operate unconstitutionally under a set of circumstances not applicable to Henson, the Supreme Court does not recognize an overbreadth doctrine outside the limited context of the First Amendment. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). Henson's due process claim thus fails.

## C. Equal Protection

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The states and, by extension, the federal government,[5] are prohibited from "mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F. 3d 291, 312 (6th Cir. 2005).

---

[5] Although the Fourteenth Amendment's Equal Protection Clause is not applicable to the federal government, the concepts of equal protection implicit in the due process guaranty of the Fifth Amendment are applicable to actions of the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 498 (1954), opinion supplemented, *Brown v. Bd. of Ed.*, 349 U.S. 294 (1955); *see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("We evaluate equal protection claims against the federal government under the Fifth Amendment just as we would evaluate equal protection claims against state and local governments under the Fourteenth Amendment.")

> Equal-protection claims that neither implicate a fundamental right nor involve a suspect or quasi-suspect class require only rational-basis review. *Romer v. Evans*, 517 U.S. 620, 631 [] (1996); *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 693 (6th Cir. 2014). Under that deferential standard, the burden is on the challenger to show that the government's action is not rationally related to any legitimate public interest. *Heller v. Doe*, 509 U.S. 312, 319 [] (1993). Many state actions burden some persons in a way that is different from the way they burden others, and the Equal Protection Clause generally requires no more than a reasoned basis for such differing treatment in situations where foundational liberties and suspect criteria are not implicated. Under rational-basis review, the government's actions enjoy a "strong presumption of validity." *Id*. at 319 [].

*Ondo v. City of Cleveland*, 795 F.3d 597, 608 (6th Cir. 2015).

Henson asserts that the district court erred by failing to apply strict scrutiny to his equal protection claim since his challenge "involved First Amendment free speech in the privacy of his own home." Appellant Br. 32. Citing *Stanley*, which struck down a Georgia law outlawing private possession of obscene material, 394 U.S. 557 (1969), Henson maintains that § 2252(a)(4)(B) is unconstitutional because it unfairly punished him while allowing, for example, hate groups to possess photographs depicting violent crimes against minorities. Appellant Br. 33.

As the district court determined, there is no fundamental right to possess child pornography, *see Ferber*, 458 U.S. at 763–64, and the government has a "compelling" interest in criminalizing all facets of child pornography, including possession. *Ferber*, 458 U.S. at 764; *Osborne*, 495 U.S. at 111. Henson's equal protection claim is a non-starter.

For these reasons, we AFFIRM Henson's conviction and sentence.