IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,764

STATE OF KANSAS,
*Appellee,*

v.

TOMMY L. JONES,
*Appellant.*

SYLLABUS BY THE COURT

1.

A district court's decision to admit or exclude evidence under K.S.A. 2020 Supp. 60-455(d) is reviewed for abuse of discretion.

2.

A district court may exclude relevant evidence if it finds its probative value is outweighed by its potential for producing undue prejudice.

3.

When a jury instruction omits an essential element of the crime charged without a contemporaneous objection, the error is reviewed on appeal for clear error.

4.

Although the offenses proscribed by K.S.A. 2014 Supp. 21-5510(a)(1) and (a)(4) are similar, the differences between them are not merely semantic in nature.

5.

Under existing Kansas statutory law, the State need not prove that a defendant knows a child's age to sustain a conviction under K.S.A. 2014 Supp. 21-5510.

6.

As a general rule, issues not raised before the trial court will not be addressed for the first time on appeal. Although there are exceptions to this rule, they are prudential.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 26, 2020. Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed August 6, 2021. Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and reversed in part, the sentence is vacated, and the case is remanded with directions.

*Michelle A. Davis,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: Following a jury trial, Tommy L. Jones was convicted of four counts of sexual exploitation of a child under K.S.A. 2014 Supp. 21-5510; counts Two and Four, describing the possession of illicit materials, were charged in the alternative to counts One and Three, which described "promoting any performance"—although the jury instructions for counts One and Three used different language to describe these offenses. At sentencing, the district court found Jones to be an aggravated habitual sex offender under K.S.A. 2014 Supp. 21-6626 and sentenced him to life in prison without the possibility of parole, though it did not impose sentence on the two counts charged in the

2

alternative. On appeal, a panel of the Court of Appeals reversed two of Jones' convictions on the basis that they were charged in the alternative. The panel also determined that Jones should have been sentenced as a persistent sex offender under K.S.A. 2014 Supp. 21-6804(j); otherwise, the panel affirmed Jones' convictions.

Both Jones and the State of Kansas petitioned this court for review. We accepted review on all issues. Jones alleges: (1) district court error in permitting evidence of prior convictions; (2) jury instructional errors; (3) unconstitutional statutory basis for conviction; and (4) sentencing error. The State alleges: (1) panel error in reversing the alternative convictions and (2) sentencing error. While we find no error in the district court's decision to permit testimony regarding Jones' prior convictions, we conclude that the asserted errors in the language of the jury instructions pertaining to Jones' convictions in counts One and Three were not harmless. Accordingly, we reverse those convictions. We also reverse the Court of Appeals' decision to reverse Jones' convictions under counts Two and Four, and—because we have reversed Jones' primary offense of conviction— vacate Jones' remaining sentences and remand the matter for further proceedings not inconsistent with this opinion, including resentencing on counts Two and Four.

FACTS AND PROCEDURAL BACKGROUND

*Underlying Facts*

In October of 2014, 16-year-old A.C. met Jones through the online game World of Warcraft while playing as her character "Grievance." A.C., who lived with her mother in Pennsylvania, initially told Jones that she was a 19-year-old male. The two began to talk regularly through the game, speaking for hours each day. After a few weeks, A.C. revealed to Jones that she was female, though she still represented that she was 18 years old.

3

Eventually, A.C.'s conversations with Jones became sexual. Jones claimed A.C. initiated the virtual sex "and that he never saw her engaged in sexual activity." He said both parties sometimes masturbated off-camera. During one such "sexual" conversation over Skype on November 3, 2014, Jones asked A.C. to send him "sexy photos" and to call him. Among other things, Jones wrote:

> "[A.C.] I'm goof ball right now..but I mean what i say. i do want you and you are so fucking amazing and beautiful. I'm also scared as fuck. I could get in so much trouble hahahahahah. In a way you are so worth the risk."

About a minute later, A.C. transmitted two photographs. Jones replied to these photographs by sending A.C. messages such as "oh yaya," "OMFG," and "COME GIVE IT TO ME!!!!" However, Jones never explicitly mentioned nude photographs in this conversation.

A few hours later, Jones and A.C. again spoke via Skype. This time, A.C. told Jones that she had been born in 1998. In response, Jones said, "lol u 16," to which A.C. replied, "2 months to be 17." Jones also later remarked, "Oh my god I can't believe I like a 16 year old," and, "I'm crazy."

Jones and A.C. also discussed their lives. A.C. expressed general frustration with her mother's control over her life, while, in several conversations, Jones encouraged A.C. to come live with him in Kansas. At one point, Jones encouraged A.C. to delete all information regarding their correspondence from her computer. A few days after learning A.C. was 16 years old, Jones and A.C. discussed practical arrangements to enable A.C. to travel to Kansas to be with Jones; during this conversation, Jones wrote, "since your [*sic*] 16, does that mean you have a joint account with your mom?"

4

Not long after this conversation, A.C. attempted to board a bus to travel to Kansas. She was ultimately prevented from traveling to Kansas, however, and police brought A.C. back to her mother—who had quarreled with A.C. earlier that day, after learning that A.C. had attempted to purchase a bus ticket and a $250 Wal-Mart gift card—in the middle of the night. A.C.'s mother then checked A.C. into an emergency room. Based on A.C.'s disclosures, the hospital informed her mother that A.C. should go to a crisis intervention center. Her mother then called the FBI.

Based on what they learned from A.C., law enforcement soon focused an investigation on Jones. The FBI contacted Jones' parole officer at Kansas Department of Corrections, Ed Desir, who was supervising Jones for his prior convictions of rape and aggravated indecent liberties with a 12 or 13 year old child. Desir then called Jones, who came in for an interview on the following morning, November 18, 2014. There, Jones acknowledged that he had been in contact with A.C. Jones also informed Desir that his laptop had been stolen on November 14, which he had reported to the police.

Undeterred, Desir asked Jones for his cell phone. Jones surrendered the phone to Desir, who briefly searched it. On Jones' Facebook Messenger account, Desir observed several messages from A.C. Based on these, Desir suspected that the phone would require further examination by law enforcement; he confiscated it and gave it to City of Wichita Detective Jennifer Wright on the following day, November 19.

After Jones' phone was put into "airplane mode" to block any external communications, the contents of the phone were downloaded and analyzed by a forensic investigator with the Sedgwick County Sheriff's Department. The investigator then produced a report documenting numerous conversations between Jones' Skype account and other individuals, including two different usernames belonging to A.C. In a folder on Jones' phone that bore A.C.'s first name, investigators found three nude photographs of

A.C. No one had attempted to delete these images; instead, someone had taken the action to move the photographs into this folder, as Skype would not have stored them automatically in a file named after A.C. Based on the filenames, these images appeared to be copies of the files sent to Jones by A.C. during a Skype conversation on November 3. Two of these photographs, which became the State's Exhibits 2A and 2C at trial, portrayed A.C. "holding her breasts" and "touching the vaginal area," respectively.

Jones acknowledged to investigators that he had spoken to A.C. over Skype. He also identified both his own Skype username and the two usernames A.C. employed. Jones told Detective Wright that he thought A.C. was 18 years old; when Wright told him otherwise, Jones "acted like that was the first time that he had heard that." Jones admitted to investigators that he and A.C. had engaged in sexual conversations together over Skype.

*Jones' Trial Testimony*

Jones testified at his trial. While he admitted to participating in sexual conversations with A.C., he claimed to have never seen the above-referenced conversation on November 3—including the photographs sent by A.C.—before trial. Jones claimed that he left his Skype account logged in to every device in his residence, and that anyone could have accessed it. According to Jones, A.C. only told him she was 17 years old on the evening of November 7, 2014; in this version, when A.C. told him she was 17, he told her that he would rather she wait until she was 18 before attempting to visit him in Kansas "because [he] was not allowed to have contact with minors."

According to Jones, A.C. mostly initiated conversations about sex. Jones denied procuring the three photos of A.C. found on his phone and denied any knowledge of how those photos ended up on his phone. Jones further denied ever asking A.C. to send him

6

nude photos of herself, denied asking A.C. to ever do anything sexual while they were talking, and denied engaging in any sexual activities himself while she was watching him. Jones claimed he could not remember if he ever asked A.C. to come to Kansas, but he believed they had a "mutual agreement about getting married." Jones claimed that, at the time they made this agreement, he thought A.C. was 18 years old.

*District Court Proceedings*

In a Second Amended Information, the State ultimately charged Jones with four counts of sexual exploitation of a child, based on the photographs contained in the State's exhibits. Counts One and Three charged Jones with promoting any performance that includes sexually explicit conduct by a child under 18 years of age knowing the character and content of the performance, under K.S.A. 2014 Supp. 21-5510(a)(4). Counts Two and Four charged Jones—in the alternative—with possessing any visual depiction of a child under 18 years of age engaging in sexually explicit conduct, under K.S.A. 2014 Supp. 21-5510(a)(2). Although the jury verdict forms did describe each count as "alternative," the jury returned guilty verdicts on all counts. The district court accepted the verdicts and found Jones guilty of all charges.

At sentencing, the district court concluded that Jones qualified as an aggravated habitual sex offender under K.S.A. 2014 Supp. 21-6626 and sentenced him to life in prison without the possibility of parole on all four counts. The district court only imposed this sentence for Counts One and Three, which it ran concurrent; the court did not impose the pronounced life sentences for the alternative counts, Two and Four.

7

*Appellate Proceedings*

Jones appealed. A panel of the Court of Appeals affirmed Jones' convictions for counts One and Three, reversed his convictions for counts Two and Four on the basis that the district court lacked authority to enter convictions on the alternatively charged counts, and concluded that Jones should have been sentenced as a persistent sex offender under K.S.A. 2014 Supp. 21-6804(j)(2)(A), rather than as an aggravated habitual sex offender under K.S.A. 2014 Supp. 21-6626. *State v. Jones*, No. 119,764, 2020 WL 3481527, at *6-7, *15 (Kan. App. 2020) (unpublished opinion). Jones and the State both petitioned this court for review, raising the six issues set forth above.

ANALYSIS

*The district court did not abuse its discretion in permitting the State to present evidence of Jones' prior convictions.*

Jones first challenges the district court's decision to permit the State to present evidence that Jones had been previously convicted of rape and aggravated indecent liberties.

*Standard of Review*

Under K.S.A. 2020 Supp. 60-455(d), subject to certain exclusions, "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." As we have previously established:

> "The admission of evidence involves several legal considerations:  determining relevance; identifying and applying legal principles including rules of evidence; and

8

weighing prejudice against probative value. We apply various standards of review during this process. First, we consider whether the evidence is relevant. All relevant evidence is admissible unless it is prohibited by statute, constitutional provision, or judicial precedent. K.S.A. 60-401(b) defines relevant evidence as 'evidence having any tendency in reason to prove any material fact.'

"Relevance has two elements: materiality and probativeness. Evidence is material when the fact it supports is in dispute or in issue in the case, and our standard of review for materiality is de novo. Evidence is probative if it has any tendency to prove any material fact, and we review a lower court's decision that evidence is probative for abuse of discretion. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. A district court may still exclude relevant evidence if it finds its probative value is outweighed by its potential for producing undue prejudice. [Citations omitted.]" *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021).

*Discussion*

*Additional Facts*

The State filed a pre-trial Motion for Admission of Evidence Pursuant to K.S.A. 60-455(d) on November 9, 2016. The district court considered the State's motion in a hearing before trial. At this hearing, the prosecutor proffered that Jones' 2008 convictions for rape and aggravated indecent liberties—with a victim who was either 12 or 13 years of age—were obtained following a trial on stipulated facts. The prosecutor further proffered that the facts underlying these previous convictions arose from what Jones supposedly characterized as a "consensual encounter," i.e., not an "overcome by force or fear sort of rape." But the prosecutor suggested that the State would only introduce this evidence by calling Jones' parole officer, who would testify that he was supervising Jones for these prior crimes with a child under 14 years of age. The prosecutor argued that these convictions were probative as to Jones' knowledge that A.C. was not 16 years old based

9

on Jones' expressions of awareness that he could get in trouble from his contact with A.C. The defense, in turn, argued that nothing about the prior convictions was relevant.

In evaluating the parties' arguments, the district court referenced the factors set forth in *State v. Prine*, 297 Kan. 460, 303 P.3d 662 (2013), including (1) how clearly the prior act has been proved, (2) how probative the evidence is of the material fact that is being admitted to prove, and (3) how seriously disputed the material fact is, and whether the government has any less prejudicial evidence it can avail itself. The court acknowledged that "the cards are sort of stacked against the defendant in these kinds of situations." The court then set forth its analysis:

> "I do think the Court has to look at this very carefully because the fact they are not the same crime and, you know, in looking at those four factors that are cited in Prine 2 at page 674 of the State's brief, which comes from the federal rules, and in looking at the other direction . . . . State v. Garcia, which talks about evidence that actually or probably brings about the wrong results under circumstances of the case is unduly prejudicial. And even in Garcia I think it is clear that . . . prior crimes of this nature, are almost always going to be prejudicial, and I can't think of a situation where they are not going to be prejudicial. And Garcia talks about . . . evidence being derogatory. It is—I don't know that there is a cleaner way, if you will, to present it to the jury than what the State is proposing.

> "And so really the ultimate question is does this material relate to a disputed fact or facts and it appears to me that it does. And does it go to the defendant's propensity to commit the crimes he's charged with in this case, and the reality of it is we're talking about two cases with underaged . . . females, and I think under . . . that statute that it is, as the State . . . has proposed, is allowed . . . .

> "The statute does appear to me to fit and it does go to facts that are clearly disputed between the parties, and, therefore, based upon the case law and the direction I will allow the State to present the evidence in the trimmed down version that they have suggested and allow that information to go to the jury."

10

*Merits*

Jones argues the district court allowed the admission of his prior convictions simply because K.S.A. 2020 Supp. 60-455(d) permitted it, without "adequately" weighing its prejudicial effect against its probative value. The Court of Appeals rejected this argument. It acknowledged its assumption that "the balancing test is required even for 60-455(d) evidence," but concluded, from the nature of the district court's comments, that it had applied the balancing test. 2020 WL 3481527, at *3-4. The panel also rejected Jones' argument that the district court failed to conduct any balancing test for insufficient briefing. 2020 WL 3481527, at *3.

We agree with the panel's reasoning. Although the district court lacked the benefit of the case cited by the panel—*State v. Boysaw*, 309 Kan. 526, 439 P.3d 909 (2019)—or the case cited above—*Levy*—it nevertheless referenced several of the factors underlying the balancing test described in those cases. See *Boysaw*, 309 Kan. at 541. The district court noted that the State's method of proving Jones' prior convictions was the most "clean[]" way to do so, implying both an attempt to minimize the time it would take to establish these convictions and the emphasis placed on them. Nor do we read the district court's discussion of the prior convictions' relevance as an indication that the court assumed this evidence was admissible no matter what, as Jones argues. Instead, the district court weighed the probative value of the convictions against their unquestionably prejudicial impact. Regardless of whether Jones' knowledge of A.C.'s age was an element of the crime (which Jones also challenges in a separate issue), part of Jones' trial strategy was to suggest that he was not the individual who asked A.C. to send "sexy" photographs of herself. Jones' propensity to engage in relationships with teenage (if not necessarily younger-than-age-18) girls was relevant to this issue, as the district court reasoned.

11

Consequently, the district court applied the correct balancing test and reached a reasonable conclusion. We find no error in its decision.

*The jury instructions with respect to counts One and Three were clearly erroneous based on their omission of an element of the charged crimes.*

Jones next argues that the district court lacked authority to convict him of the crimes charged in counts One and Three because the jury instructions used different language than the charging document. Jones argues that these convictions—which he claims arose under K.S.A. 2014 Supp. 21-5510(a)(1), even though the district court's journal entry recorded them as arising under (a)(4)—violated his right to have a jury determine every element charged under the Sixth and Fourteenth Amendments, as recognized by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

*Standard of Review*

Before addressing Jones' argument, we must first consider the framework under which to view it. Jones couches his argument in the language of a challenge to the district court's authority to enter a conviction "because the jury did not determine that [Jones] committed (a)(4) crimes," rather than as a challenge to the jury instructions themselves. We are unpersuaded that this framing entitles him to a different standard of review from a normal challenge to jury instructions, however. Indeed, the case he cites for the premise that a complaint's wording is binding on the State—*State v. Trautloff*, 289 Kan. 793, 802-03, 217 P.3d 15 (2009)—itself addressed erroneous jury instructions, not the district court's absence of authority to enter a conviction founded upon erroneous instructions.

Instead, we agree with the Court of Appeals' decision to assess this issue as a question of jury instruction error. *Jones*, 2020 WL 3481527, at *7-8. Ordinarily, when

12

presented with a claim that a district court has erred in issuing or refusing to issue a jury instruction:

> "(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in [*State v.* ]*Ward*[, 292 Kan. 541, 565, 256 P.3d 801 (2011)]." *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

"The first element of this analysis ultimately affects the last one 'in that whether a party has preserved an issue for review will have an impact on the standard by which we determine whether an error is reversible.'" *State v. Ross*, 310 Kan. 216, 223, 445 P.3d 726 (2019) (quoting *State v. Barber*, 302 Kan. 367, 377, 353 P.3d 1108 [2015]). If, as here, a defendant does not object to a district court's jury instructions, an appellate court:

> "appl[ies] the clear error standard mandated by K.S.A. 2017 Supp. 22-3414(3). Under that standard, an appellate court assesses whether it is 'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.' [The defendant] has the burden to establish reversibility, and in examining whether he has met that burden we make a de novo determination based on the entire record. [Citations omitted.]" *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018).

But our review is complicated by the fact that, here, the claimed legal error resulted in the total omission of an essential element of the charged crime. As we have recognized:

13

"A jury is vested with the duty to determine whether a defendant is guilty or not guilty of each charged crime; and in fulfilling that duty, it must apply the law to the facts as it finds them. Therefore, the failure to properly instruct a jury on the essential elements of the crime charged typically prevents the jury from rendering a proper verdict. Moreover, a defendant's right to have the jury properly instructed on all essential elements of the charged crime is rooted in the Sixth Amendment to the United States Constitution, which guarantees a defendant's right to trial by jury. [Citations omitted.]" *State v. Brown*, 298 Kan. 1040, 1045, 318 P.3d 1005 (2014).

In the absence of a contemporaneous objection, the failure to include an essential element of the crime in jury instructions is still reviewed for clear error. 298 Kan. at 1048 (citing *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 [2012]). "In other words, where the appellate record convinces the appellate court that the jury would have found the essential element if it had been asked to do so, the failure to obtain the jury's finding is harmless error." *Brown*, 298 Kan. at 1049 (discussing *State v. Reyna*, 290 Kan. 666, 234 P.3d 761 [2010], *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 [2016]). See also *State v. Daniels*, 278 Kan. 53, 58-63, 91 P.3d 1147 (2004) (reviewing the omission of an element for clear error, but noting the need to evaluate harmlessness under the test set forth in *Neder v. United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 [1999]: "[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless."). Stated another way, "The error is harmless if the appellate court has a firm belief beyond a reasonable doubt that the error had little, if any, likelihood of changing the result of the trial." *State v. Jarmon*, 308 Kan. 241, 244, 419 P.3d 591 (2018) (further describing the standard of review as "relaxed because Jarmon did not object to the instructions").

*Discussion*

K.S.A. 2014 Supp. 21-5510 provides, in part:

"(a) Sexual exploitation of a child is:

(1) Employing, using, persuading, inducing, enticing or coercing a child under 18 years of age, or a person whom the offender believes to be a child under 18 years of age, to engage in sexually explicit conduct with the intent to promote any performance;

. . . .

(4) promoting any performance that includes sexually explicit conduct by a child under 18 years of age, or a person whom the offender believes to be a child under 18 years of age, knowing the character and content of the performance.

. . . .

"(d) As used in this section:

. . . .

(2) 'promoting' means procuring, transmitting, distributing, circulating, presenting, producing, directing, manufacturing, issuing, publishing, displaying, exhibiting or advertising:

(A) For pecuniary profit; or

(B) with intent to arouse or gratify the sexual desire or appeal to the prurient interest of the offender or any other person."

In counts One and Three, Jones was charged with violating K.S.A. 2014 Supp. 21-5510(a)(4) based on the act of "promot[ing] any performance that includes sexually

15

explicit conduct by a child under eighteen (18) years of age . . . knowing the character and content of the performance." In contrast, the jury instructions tracked the language of K.S.A. 2014 Supp. 21-5510(a)(1) by advising the jury that the State had to prove Jones persuaded, induced, or enticed the child victim to engage in sexually explicit conduct "with the intent to promote a performance."

The State concedes that the jury instructions were legally erroneous, as the Court of Appeals concluded. We agree. But the State also argues that the instruction was not *clearly* erroneous based on the strength of the evidence of Jones' guilt. The Court of Appeals agreed with this approach, writing, "Had the district court properly instructed the jury, we are convinced beyond a reasonable doubt that Jones would have been convicted." *Jones*, 2020 WL 3481527, at *9. We disagree.

First, while we appreciate the Court of Appeals' observation that the distinction between a violation of K.S.A. 2014 Supp. 21-5510(a)(1) and a violation of (a)(4) "would likely be lost on the jury," the differences between the subsections are not mere semantics. 2020 WL 3481527, at *9. To convict Jones of a violation under (a)(4), the jury had to determine that Jones promoted, i.e., procured "any performance that includes sexually explicit conduct by a child under 18 years of age, . . . knowing the character and content of the performance." In contrast, the jury actually convicted Jones of *persuading* A.C. "to engage in sexually explicit conduct with the intent to promote any performance." K.S.A. 2014 Supp. 21-5510(a)(1). In other words, the jury was instructed that it had to consider whether, beyond a reasonable doubt, the evidence supported a finding that Jones (1) persuaded, (2) a child under 18 years of age, (3) to engage in sexually explicit conduct, and (4) with the intent to promote any performance. As charged, however, Jones' *actual* crime required a finding that Jones (1) promoted or procured, (2) any performance, (3) that includes sexually explicit conduct, (4) by a child under 18 years of age, and (5) knew the content and character of the performance.

16

Second, the evidence that Jones committed violations under *both* K.S.A. 2014 Supp. 21-5510 (a)(1) and (a)(4) is not so strong as to provide us with "a firm belief beyond a reasonable doubt that the error had little, if any, likelihood of changing the result of the trial." *Jarmon*, 308 Kan. at 244. Jones asked A.C. to send "sexy pictures" during their "sexual" conversation of November 3. Had the jury been properly instructed, it could have inferred this demonstrated knowledge of the content and character of the requested performance—being the nude pictures A.C. later sent to Jones. However, given the error, the evidence is less than overwhelming.

Critically, the strongest direct evidence that Jones *knew* what he was asking for lies in his use of the adjective "sexy." Without putting too fine a point on it, materials which could be viewed as "sexy" do not necessarily meet the statutory definition of "sexually explicit conduct." "Sexy" could mean an expressive facial expression or a suggestive pose of a fully clothed person. The meaning of "sexually explicit conduct" is specifically defined by K.S.A. 2014 Supp. 21-5510(d)(1) as "actual or simulated: Exhibition in the nude; sexual intercourse or sodomy, including genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex; masturbation; sado-masochistic abuse with the intent of sexual stimulation; or lewd exhibition of the genitals, female breasts or pubic area of any person." The overlap of "sexy" with "sexually explicit conduct" is not so complete as to warrant our firm belief, on appellate review, that the error had little likelihood of changing the result at trial.

Consequently, we find the jury instructions given with respect to counts One and Three to be clearly erroneous and reverse Jones' convictions for those counts. This decision also controls our analysis of the State's claim that the panel erred in reversing two of Jones' alternatively charged convictions for counts Two and Four. Without

17

addressing the merits of the panel's decision on this point, we find that the basis upon which the panel reversed Jones' convictions for counts Two and Four no longer exists. Consequently, we reverse the panel's decision to reverse Jones' convictions for counts Two and Four.

Additionally, because the district court considered count One to be the primary offense, our reversal of Jones' conviction for count One requires us to remand the matter for resentencing upon Jones' remaining convictions in counts Two and Four. K.S.A. 2020 Supp. 21-6819(b)(5). Thus, we reverse Jones' convictions for counts One and Three, reverse the panel's decision to reverse Jones' convictions for counts Two and Four, vacate Jones' sentences for all four counts, and remand the matter to the district court for further proceedings not inconsistent with this opinion—including resentencing for counts Two and Four under K.S.A. 2020 Supp. 21-6819(b)(5) and, potentially, retrial on counts One and Three.

*The jury instructions' comment that the State need not prove Jones knew A.C.'s age was legally appropriate under existing Kansas statutes. Additionally, Jones failed to preserve his First Amendment challenge to K.S.A. 2014 Supp. 21-5510 for appellate review.*

Jones' next issue is bifurcated. He first argues the jury instructions were clearly erroneous because they informed the jury that, "The State need not prove the defendant knew the child's age." He argues this instruction represents an incorrect statement of the law. Second, Jones argues that, if the jury instructions correctly stated that the prosecution was not required to prove Jones knew A.C.'s age, then the statute itself was facially unconstitutional based on its overbreadth, in violation of the First Amendment. Jones did not object to the jury instructions or raise this constitutional issue at trial.

18

*Standard of Review*

We have already set forth our standard of review as to claims of jury instruction error. As to Jones' constitutional challenge:

> "We review the constitutionality of a statute as a question of law and apply a de novo standard of review. The constitutionality of a statute is presumed, and all doubts must be resolved in favor of the validity of the statute. Before the statute may be stricken, it must clearly appear to violate the constitution. This court must construe the statute as constitutionally valid if there is any reasonable way to do so. [Citations omitted.]" *Tolen v. State*, 285 Kan. 672, 673, 176 P.3d 170 (2008).

A facial challenge to the constitutionality of legislation is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697 (1987). Moreover, "[t]he fact that the [challenged legislation] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." 481 U.S. at 745. See *State v. Watson*, 273 Kan. 426, 435, 44 P.3d 357 (2002). Additionally, within the context of First Amendment "overbreadth" challenges,

> "Where conduct and not merely speech is involved, the United States Supreme Court requires that 'the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' This court has divided this burden into a two-part test. The party attacking the constitutionality of a statute on the basis of overbreadth must establish '(1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing that law's constitutional from its unconstitutional applications.' [Citations omitted.]" *State v. Williams*, 299 Kan. 911, 920, 329 P.3d 400 (2014).

*Discussion*

*Jury Instructions*

Jones first argues that the jury instructions were legally inappropriate based on their assertion that the State need not prove Jones knew A.C.'s age. We disagree.

The challenged jury instructions were modeled after PIK Crim. 4th 55.180. As authority for the challenged portions of the instructions, PIK cites K.S.A. 21-5204(b): "Proof of a culpable mental state does not require proof: . . . (b) that the accused had knowledge of the age of a minor, even though age is a material element of the crime with which the accused is charged." Cf. *State v. Fore*, 17 Kan. App. 2d 703, 705, 843 P.2d 292 (1992) (predecessor to K.S.A. 21-5204 "expressly bars lack of knowledge about a minor's age as a defense to the crimes charged"). Consequently, we conclude that the instructions accurately captured Kansas law as written.

*First Amendment Overbreadth Challenge*

As a fallback, Jones argues that, if the jury instructions accurately stated Kansas law as written, then the law is nevertheless unconstitutionally overbroad, in violation of the First Amendment. Jones relies primarily on *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72-73, 115 S. Ct. 464, 130 L. Ed. 2d 372 (1994), to support this argument.

But Jones did not raise his constitutional challenge to K.S.A. 2014 Supp. 21-5510 at trial. He asked the Court of Appeals to address this issue for the first time on appeal based on (1) the purely legal character of the issue, and (2) the need to consider the issue to prevent a denial of fundamental rights. Both are recognized exceptions to the general rule. See, e.g., *State v. Vonachen*, 312 Kan. 451, 457, 476 P.3d 774 (2020). Theoretically,

20

both exceptions could apply. See, e.g., *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 234, 689 P.2d 860 (1984) (recognizing freedom of speech as "among the most fundamental personal rights and liberties of the people"). But see *United States v. Henson*, 705 Fed. Appx. 348, 356 (6th Cir. 2017) (unpublished opinion) ("there is no fundamental right to possess child pornography"). Nevertheless, both exceptions are prudential, which appellate courts can apply in their discretion. See, e.g., *State v. Gross*, 308 Kan. 1, 6, 417 P.3d 1049 (2018).

The Court of Appeals refused to consider the matter for the first time on appeal, citing *State v. Zabrinas*, 271 Kan. 422, 427, 24 P.3d 77 (2001). *Jones*, 2020 WL 3481527, at *10. There, the court refused to address a challenge to the constitutionality of K.S.A. 21-3516 (the predecessor of K.S.A. 21-5510) based on the absence of a scienter requirement. *Zabrinas*, 271 Kan. at 427. As the court wrote:

> "Had the scienter argument been raised below, the jury might have been more specifically instructed. However, the instructions given are clearly sufficient and required a finding that the defendant's conduct was intentional, which was defined as 'willful and purposeful and not accidental.' One of the stated exceptions to our rule that '[a]n issue not presented to the trial court will not be considered for the first time on appeal,' is that such a question should be considered if necessary to serve the ends of justice or prevent denial of fundamental rights. Based on the clearly pornographic nature of all of the material viewed, the consideration of the scienter contention is not necessary here, and we limit our discussion to the overbreadth issue. [Citations omitted.]" 271 Kan. at 427.

Later, the *Zabrinas* court also noted the "uncontroverted" testimony estimating that the children depicted were all "substantially under the age of 16 years," which "would be known to any viewer." 271 Kan. at 432-33. While this aspect of *Zabrinas* is distinguishable from Jones' case, we nevertheless find the Court of Appeals did not abuse its discretion by declining to consider Jones' First Amendment claim for the first time on appeal.

Although we agree with the panel's decision, we depart from its conclusion that part of Jones' argument was "waived or abandoned" under Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35) because Jones did "not explain why this issue was not raised at the district court level and why we should consider it for the first time on appeal." *Jones*, 2020 WL 3481527, at *9. Although Jones did not explain why the argument was not raised below, his amended brief before the Court of Appeals represented that, "Although trial counsel did not challenge the constitutionality of the statute below, this Court may consider the claim as, (1) a question of law arising on proved or admitted facts that is determinative of the case, and (2) necessary to prevent a denial of fundamental rights." Later, in a reply brief, Jones devoted several pages of argument to this issue, including an attempt to distinguish *Zabrinas*. Consequently, Jones' appellate briefing did not fall afoul of Rule 6.02(a)(5), and we disagree with the panel's conclusion that his argument was waived or abandoned. Regardless, we reiterate that the panel did not abuse its discretion in refusing to consider this issue.

*We do not address the parties' remaining arguments.*

The parties present three final issues. We have already noted the State's challenge to the panel's decision to reverse Jones' alternatively charged convictions. As we have indicated, we decline to reach the merits of this issue because the panel's basis for reversing Jones' convictions for counts Two and Four no longer exists, i.e., there are currently no alternatively charged convictions to counts Two and Four. Moreover, as we cannot determine whether the State will retry Jones on the two counts reversed above, any discussion of the proper remedy for alternatively charged convictions would be entirely speculative at this point. Cf. *Sierra Club v. Mosier*, 305 Kan. 1090, 1130, 391 P.3d 667 (2017) (describing an argument as "currently moot under existing law and not

ripe pending speculation regarding the resolution of the other litigation"). We thus leave this question for another day.

The final two issues both pertain to the question of Jones' sentences. Specifically, the State contends that the Court of Appeals panel erred in vacating Jones' sentences under the aggravated habitual sex offender statute, K.S.A. 2014 Supp. 21-6626(c), on the basis that the rule of lenity required Jones to be sentenced as a persistent sex offender under K.S.A. 2014 Supp. 21-6804(j). Jones also takes issue with a related aspect of the panel's decision, claiming the panel erred in rejecting his contention that, because the State did not mention prior "sexually violent" crimes in the charging document to put him on notice that he could be sentenced as either a persistent or an aggravated habitual sex offender, the district court could only sentence him to the terms of imprisonment authorized for level 5 felony offenses.

Because we have reversed Jones' convictions in counts One and Three, reversed the panel's decision to reverse Jones' convictions in counts Two and Four, and remanded the case to the district court for further proceedings—including resentencing Jones, as required by K.S.A. 2020 Supp. 21-6819(b)(5)—we also find both arguments to be moot in part and unripe in part, as the circumstances underpinning the parties' arguments have been swept away, and it is beyond our power to guess whether—and when—they may emerge again. Nor do we find the possibility that the district court will resentence Jones as a persistent sex offender for counts Two and Four, rather than an aggravated habitual sex offender, to render the issue sufficiently definite to merit our consideration at the present. Cf. *State v. Montgomery*, 295 Kan. 837, 841, 286 P.3d 866 (2012) (noting exception to mootness doctrine for issues capable of repetition); *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 896, 179 P.3d 366 (2008) (to be ripe, issues must have "taken fixed and final shape rather than remaining nebulous and contingent"). Consequently, we do not reach the parties' final three arguments.

23

CONCLUSION

Jones' convictions for sexual exploitation of a child under counts One and Three of the Second Amended Information are reversed due to clearly erroneous jury instructions, and his sentences for those convictions are vacated. We further reverse the Court of Appeals' decision to reverse Jones' convictions under counts Two and Four, vacate the district court's sentences for those counts pursuant to K.S.A. 2020 Supp. 21-6819(b)(5), and remand the matter for further proceedings not inconsistent with this opinion.

Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and reversed in part, the sentence is vacated, and the case is remanded with directions.